# Glancy v. McKees Rocks Borough, Appellant.

*Negligence—Municipalities—Dangerous sidewalks—Death—Intoxication of deceased—Evidence—Circumstantial evidence.*

1. In an action to recover damages for a death alleged to have been caused by defendant's negligence, the burden is upon the plaintiff to produce evidence which would justify a finding that the negligence of the defendant was the sole producing and proximate cause of the death, and in the absence of direct proofs the evidence must be such as reasonably to justify that conclusion alone.

2. Where in such action the only evidence of negligence is circumstantial, and inferences can reasonably be drawn from the testimony that would lead equally as well to the conclusion that the death was due to other causes, the finding of the jury represents nothing more than a guess or conjecture upon the essential point, and a verdict for plaintiff in such case will not be sustained.

3. The element relied on to justify a finding that loss of life was due to a particular act of negligence, in the absence of direct testimony of eye-witnesses, is the natural instinct which leads men in their sober senses to avoid injury and preserve life. The circumstance that the man who met his death was sober and able to control his actions and presumably did not do anything out of the usual and ordinary course which would be pursued under like surroundings by a man in his sober sense, is the controlling element in determining whether the evidence is sufficient to sustain a verdict; but this presumption will not be given effect in the case of a man who admittedly was not in his sober senses at the time of the accident.

4. In an action of trespass to recover damages for the death of plaintiff's husband, it appeared that deceased had been found dead at the foot of a declivity adjacent to a street in defendant borough. Plaintiff alleged that defendant had maintained a defective, unsafe and unguarded sidewalk at the edge of this slope, the condition of which was responsible for her husband's death. There were no eye-witnesses of the accident and plaintiff relied upon circumstantial evidence to prove her case. It appeared that deceased late in the evening had been seen walking in a badly intoxicated condition on the sidewalk above the spot where his body was subsequently found; there was no expert testimony as to the cause of death, but lay witnesses, one of whom was an undertaker and another a railroad man, gave their opinion that

death had resulted from a broken neck. ˙ *Held,* that the evidence did not lead to the conclusion that death was caused by the negligence of the defendant, and judgment upon a verdict for plaintiff was reversed.

Argued Oct. 21, 1913. Appeal, No. 47, Oct. T., 1913, by defendant, from judgment of C. P. Allegheny Co., Sept. T., 1910, No. 498, on verdict for plaintiff in case of Emma B. Glancy v. The Borough of McKees Rocks. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for the death of plaintiff's husband. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $2,250 and judgment thereon. Defendant appealed.

*Errors assigned* were the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*Edward F. Duffy,* for appellant.

*L. K. Porter,* of *L. K. & S. C. Porter,* with him *Morse J. Keller,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5, 1914:

On June 11, 1910, between 5 and 6 o'clock in the morning, Lawrence Glancy, the plaintiff's husband, was found dead at the foot of a declivity or slope adjacent to Island avenue, a street in the defendant borough. The plaintiff alleged that the defendant maintained a defective, unsafe and unguarded sidewalk on the top and at the edge of this slope, and she recovered a verdict upon the theory that her husband's death was due to this act of negligence. Judgment was entered accordingly, and the defendant has appealed.

There were no eye-witnesses to the event, and the plaintiff depended upon the surrounding circumstances to sustain the finding comprehended in the verdict that her husband's death was attributable to the negligence of the defendant. When we confine our attention to the evidence relied upon by the plaintiff, and assume its acceptance by the jury, it shows the following facts, upon which the verdict must stand or fall: Glancy was last seen alive June 10, 1910, between 9:30 and 10 P. M., on Island avenue, walking toward and about 200 feet distant from the spot where his body was subsequently found; at that time he was badly intoxicated and had been for some hours, although he was able to walk; Island avenue was graded and improved to its full width by a fill of twelve feet above the abutting property; the sidewalk was about nine feet wide, paved with brick and supported by a cribbing of ties; the cribbing made a perpendicular fall from the pavement of over two and one-half feet, from which the embankment sloped fifteen or twenty feet into the property where the body was discovered; this property was unfenced and immediately accessible by at least one other nearby open public way; a shallow box or drain extended along the foot of the slope, and when Glancy was found his head was on the drain and his feet pointed toward the slope; the sidewalk in the immediate vicinity was "wavy," some of the bricks being loose and others out of place, and there was no guard-rail along the embankment, which condition had existed for a considerable length of time; there were two large electric arc lights, one about 200 and the other 300 feet away from the point in question, and the fires of manufacturing establishments in the neighborhood shed more or less light. There was no expert testimony, but certain lay witnesses, one of whom had had experience with dead bodies as an undertaker, and another as a railroad man, gave the opinion that death was due to a broken neck. Some of the witnesses who found the body stated that it was cold, but one said that it was "a

little wee bit warm," and the only witness who expressed a view as to how long life had been extinct was the one with the undertaker's experience; he said, "four or five hours." One of the witnesses who last saw Glancy alive said that he followed him along Island avenue, after the deceased had a start of about three minutes, and got no trace of him; but he further stated, that in the interval Glancy had time to go beyond the point where his body was subsequently found, adding, that he could have gone to another saloon above that point and back again before the witness commenced his observations.

It is not clear that the position and condition of the sidewalk at this particular location was such as to make the absence of a guard-rail negligence; but, for the purposes of the present review, we will assume that the jury could have found that the defendant borough was at fault in this respect. We are of opinion, however, that the evidence depended upon is not sufficient to justify or sustain the conclusion that Glancy's death was properly attributable to this alleged negligence, for even though the proofs be viewed in the light most favorable to the plaintiff, yet, a reasonable mind desiring only to ascertain the actual facts would not necessarily come to the conclusion that the deceased accidentally fell over the unguarded slope or that he was tripped by the defects in the pavement and precipitated down the declivity; so far as the evidence goes, it may as well be that this drunken man started down the incline for some undisclosed purpose, and slipped and fell; or, it may be that he got on the vacant property where his body was found in another way, and stumbled while attempting to ascend the slope.

The burden was upon the plaintiff to produce evidence which would justify a finding that the negligence of the defendant was the sole producing and proximate cause of her husband's death, and in the absence of direct proofs, the evidence relied upon would have to be such as reasonably to justify that conclusion alone; where,

as here, inferences can reasonably be drawn from the testimony that would lead equally as well to other conclusions, the finding of the jury represents nothing more than a guess or conjecture upon this essential point; and a verdict cannot be sustained under these circumstances. (Stringert v. Ross Township, 179 Pa. 614; Runkle v. Pittsburgh, 238 Pa. 349.) While, beginning with Allen v. Willard, 57 Pa. 374, we have repeatedly affirmed verdicts based on circumstantial evidence, where they comprehended a finding that the loss of a life was solely due to a particular act of negligence, yet, in those cases the element most frequently called attention to in order to justify such a finding in the absence of direct testimony by eye-witnesses is, "the natural instinct which leads men in their sober senses to avoid injury and preserve life." An examination of the authorities in question will show that, in each instance where the facts at all approximate those of the present case, the circumstance that the man who met his death was sober and able to control his actions, and, therefore, presumably did not do anything out of the usual and ordinary course which would be pursued under like surroundings by a man in his "sober senses," really was the controlling element in determining that the evidence was sufficient to sustain the verdict (see, Scranton v. Dean, 2 W. N. C. 467; McManamon v. Hanover Township, 232 Pa. 439; Welsh v. Erie & Wyoming Valley R. R. Co., 181 Pa. 461. Also see, Mooney v. Pennsylvania Railroad Co., 203 Pa. 222); and we know of no instance where this presumption has been given effect in the case of a man who admittedly was not in his "sober senses."

It may be, as suggested by the appellant, that the plaintiff's husband carelessly reeled off the edge of the pavement upon which he was walking; we do not, however, rule this case on the theory of contributory negligence, but rather on the absence of proofs from which it could justifiably be found that the event leading to the loss of this life was occasioned by negligence of the de-

fendant. In short, the evidence relied upon fails reasonably to connect the defendant's alleged negligence with the presence of Glancy's body at the foot of the embankment in such a way as to afford the basis for a fair presumption that it was the cause of his death; hence, the verdict cannot stand.

In a case of this character, the coroner's physician or some other competent medical man should have been called to prove the particular ailment which produced death. The deceased may have died from a broken neck, and for the purposes of this review we have assumed that he did, yet, in point of fact, the evidence shows that he was sorely battered and bruised in a fight or from some other cause when last seen alive, and the exact ailment which actually produced death was not satisfactorily shown; but, whatever it was, and whatever undisclosed events led to it, a reading of the testimony brings the conviction that in all probability this unfortunate man was the victim of conditions brought about by his own excesses, and for this the defendant cannot be held responsible.

The assignments of error are sustained; the judgment is reversed and is here entered for the defendant.